**JASSY VICK CAROLAN LLP**
JEAN-PAUL JASSY, Cal Bar No. 220513
  jpjassy@jassyvick.com
MEGHAN FENZEL, Cal. Bar No. 324139
  mfenzel@jassyvick.com
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:   310-870-7048
Facsimile:   310-870-7010

Attorneys for Moving Party and
Non-Party Journalist
KENNETH JACOBY

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH JACOBY,<br><br>         Moving Party,<br><br>    vs.<br><br>BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM,<br><br>         Responding Party. | Case No. 2:23-mc-00403-KJM-AC<br><br>*Pending in the Middle District of Louisiana, Case No. 3:22-cv-00338-BAJ-SDJ*<br><br>**DECLARATION OF JEAN-PAUL JASSY IN SUPPORT OF JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT CONCERNING SUBPOENA TO JOURNALIST KENNETH JACOBY** |

# DECLARATION OF JEAN-PAUL JASSY

I, Jean-Paul Jassy declare as follows:

1. I am over the age of 18 years, and I am an attorney authorized to practice before this Court. I am a partner of Jassy Vick Carolan LLP, counsel to moving party Kenneth Jacoby who is a professional journalist and reporter for *USA Today*. I submit this declaration in support of the Joint Statement Regarding Discovery Disagreement Concerning Subpoena to Journalist Kenneth Jacoby in the above-captioned action, *Kenneth Jacoby v. Board of Supervisors of the University of Louisiana System*, Case No. 2:23-mc-00403-KJM-AC in the United States District Court for the Eastern District of California. The Subpoena at issue seeks discovery from Mr. Jacoby in an underlying action, *Jane Doe v. Board of Supervisors of the University of Louisiana System, et al.*, Case No. 3:22-cv-00338-BAJ-SDJ, pending in the United States District Court for the Middle District of Louisiana. The following facts are true of my own personal knowledge except for those stated on information and belief, which facts I believe to be true.

2. Kenneth Jacoby is, and at all relevant times was, a reporter for *USA Today*, a nationwide newspaper operated by Gannett Co. Inc. Mr. Jacoby is the author of a May 26, 2021 article published in *USA Today*, "Six women reported a Louisiana college student for sexual misconduct. No one connected the dots" (the "Article"). A true and correct copy of the Article is attached as **Exhibit 1.**

3. A year after the Article's publication, Jane Doe, one of the women who reported Victor Daniel Silva to the Board of Supervisors of the University of Louisiana System ("ULS") for assault, filed a Title IX lawsuit against ULS, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, and Lafayette City-Parish Consolidated Government, also raising state law negligence claims against each of the Defendants. Jane Doe directly references the Article in Paragraphs 10 and 125 through 133 of the Complaint, crediting the Article with making her aware of the Defendants' pattern of behavior. A true and correct copy of the May 25, 2022 Complaint filed in *Jane Doe v. Board of Supervisors of the University of Louisiana System et al.*, Case No. 3:22-cv-00338-BAJ-SDJ, pending in the United States District Court for the Middle District of Louisiana is attached as **Exhibit 2.**

-1-  DECLARATION OF JEAN-PAUL JASSY

4. A year and a half later, on October 2, 2023, Counsel for ULS, Catherine Giering, emailed to Mr. Jacoby – but did not serve – a purported subpoena under Federal Rule of Civil Procedure 45. The "subpoena" improperly sought production of documents in Baton Rouge, Louisiana, although Mr. Jacoby works and resides in Sacramento, California. Attachment A to the "subpoena" included 28 broad categories of document requests for Mr. Jacoby's unpublished newsgathering materials associated with the Article.

5. On October 13, 2023, I responded to Ms. Giering in an eight-page letter, detailing the procedural and substantive defects with the purported October 2, 2023 subpoena. I noted that the subpoena was not properly served and that it demanded production of documents more than 100 miles from where Mr. Jacoby lives, works, or regularly transacts business in person, in violation of Federal Rule of Civil Procedure 45(c)(2)(A). I then detailed why the purported subpoena, with its 28 overly broad categories of document requests was unduly burdensome under Rule 45 and violated, inter alia, Mr. Jacoby's rights under the reporter's privilege embodied in the First Amendment of the United States Constitution, California's constitutional and statutory reporter's shield law, and the common law. A true and correct copy of my October 13, 2023 letter to Ms. Giering responding to the October 2, 2023 purported subpoena is attached as **Exhibit 3.**

6. On October 25, 2023, Ms. Giering emailed me asking for a call on October 27, 2023. On that call, which lasted approximately 45 minutes, Ms. Giering acknowledged the issues with what she called the "hastily issued" subpoena, but highlighted ULS's interest in learning the method, timing, and contents of communications between Mr. Jacoby and Jane Doe. Specifically, she told me that ULS was interested in notes from Mr. Jacoby's interview with Jane Doe, details on when the interview took place, the timing of the interview, and the subject matter of what Mr. Jacoby communicated to Jane Doe. Ms. Giering noted that she believed ULS had established a statute of limitations defense through other discovery and had testimony from Jane Doe at her deposition detailing the timing of the communications with Mr. Jacoby, but she wanted discovery from Mr. Jacoby to "corroborate" that evidence. Ms. Giering specifically and repeatedly stated that she wanted discovery from Mr. Jacoby to "corroborate" and "confirm" testimony from Jane Doe. Ms. Giering suggested she would drop the subpoena entirely if Mr. Jacoby would agree to an

affidavit detailing the method, timing, and subject matter of his communications with Doe. I communicated Ms. Giering's proposal to Mr. Jacoby, and, per Ms. Giering's later request on October 28, 2023, I promptly agreed to accept service of a new subpoena for Mr. Jacoby via email.

7. On October 31, 2023, I received service of a procedurally proper but otherwise substantively identical subpoena from ULS directed to Mr. Jacoby, requesting document production in Sacramento, California (the "Subpoena"). The Subpoena included the same 28 broad categories of document requests as the October 2 version, despite my eight-page letter and lengthy phone conversation with Ms. Giering addressing the substantive problems with the requests. A true and correct copy of the full subpoena package served on October 31, 2023 is attached as **Exhibit 4.**

8. Having received the Subpoena with the same 28 broad categories, on November 13, 2023, Mr. Jacoby initiated the above-captioned miscellaneous action to move to quash the Subpoena. On November 14, 2023, my office arranged personal service to ULS of the motion to quash papers. We also served Ms. Giering with the motion to quash papers as well as written objections to the Subpoena. A true and correct copy of Mr. Jacoby's November 14, 2023 objections to the Subpoena are attached as **Exhibit 5.**

9. On November 15, 2023, my colleague Meghan Fenzel and I met and conferred telephonically with Ms. Giering and her colleague, Reynolds LeBlanc. We spoke for one hour. We discussed the Motion to Quash and Joint Statement procedure. I confirmed that Mr. Jacoby's arguments would be consistent with what I had written in my October 13, 2023 letter. During the meet and confer call:

    a. Ms. Giering expressed surprise that Mr. Jacoby had filed a motion given our call on October 27, and Ms. Giering threatened sanctions over the filing of the motion because of the meet and confer call on October 27, but I reminded her how the October 31 Subpoena, with its identical and overly broad 28 requests, led us to believe ULS was not narrowing their requests.

    b. Ms. Giering agreed to narrow the scope of the operative subpoena, withdrawing the 28 broad document requests, to only seek: (1) notes from conversations between Jacoby and Jane Doe from December 2018 to May 26, 2021; (2) text

       messages between Jacoby and Jane Doe from December 2018 to May 26, 2021; and (3) an affidavit from Jacoby authenticating copies of the production and providing a context for the production.

    c. Ms. Giering noted that if Mr. Jacoby did not agree to provide an affidavit, ULS would subpoena Mr. Jacoby for deposition. She requested that I confirm if I would accept service of a deposition subpoena and if December 14, 2023 was an available date for the deposition. I confirmed that I would relay the request to Mr. Jacoby, and later I did agree to accept service of a subpoena for a deposition of Mr. Jacoby set for December 14, 2023, while reserving all objections and positions.

    d. Ms. Giering explained that ULS's premise for discovery was to see whether Mr. Jacoby revealed anything in interviews and communications with Jane Doe before May 26, 2021 that would toll the statute of limitations for her claims. Ms. Giering stated that the claims would be time-barred if Jane Doe had been aware that she had a claim prior to reading Mr. Jacoby's article on May 26, 2021. This was Ms. Giering's explanation for seeking the notes and substance of the interviews with Mr. Jacoby. Ms. Giering acknowledged the topic had been partially addressed during Jane Doe's deposition, but Ms. Giering asserted that the deposition responses had not ruled out potential statute of limitations issues.

    e. Ms. Giering explained that Jane Doe had produced text messages with Mr. Jacoby beginning in December 2020, but because they referenced a prior communication, Ms. Giering was not convinced that they constituted all text messages between the two. She also noted that a possible source of purportedly lost messages was Jane Doe acquiring a new phone at some point prior to December 2020.

    f. I asked Ms. Giering if she had subpoenaed Jane Doe's phone service provider or email service provider for records. Ms. Giering stated that she had not

    subpoenaed any phone provider, cloud backup provider, or email service provider for Jane Doe's communications with Mr. Jacoby.

 g. I requested a copy of text messages between Jane Doe and Mr. Jacoby that were produced by Jane Doe. Ms. Giering said she would consider the request, but ultimately did not provide them to me.

 h. I reiterated Mr. Jacoby's position that his unpublished newsgathering materials were protected under the reporter's privilege and shield laws. Ms. Giering asserted that the California reporter's shield laws did not apply. I responded that Mr. Jacoby's main argument was under First Amendment law, but I also asserted the California shield laws would apply. We discussed further various authorities and positions related to the reporter's privilege and shield laws.

 i. Ms. Fenzel and I also explained the procedures and deadlines for the Joint Statement to Ms. Giering. We explained how we attempted to select a hearing date available before the close of discovery in the underlying matter on December 15, 2023, but also tried to allow the maximum time for each party to brief the Joint Statement in light of the Thanksgiving holiday.

10. Also on November 15, 2023, I gave Ms. Giering procedural guidance on the Joint Statement and directed her to Local Rule 251. On November 16, 2023, my colleague, Ms. Fenzel, provided Ms. Giering with a shell of the Joint Statement for ULS to insert their portion of the briefing and return by November 27, 2023 to allow time to finalize before the November 29, 2023 filing, consistent with the Court's model Standing Order and Local Rule 251.

11. After the filing of Mr. Jacoby's motion to quash and the November 15, 2023 conference of counsel, but before the filing of the Joint Statement, I am informed and believe that ULS issued a subpoena to Verizon Wireless for Jane Doe's phone records.

12. After the November 15, 2023 conference of counsel, but before the filing of the Joint Statement, I am informed and believe that Jane Doe produced in discovery the first written communication she received from Mr. Jacoby, an email dated December 9, 2020.

-5-         DECLARATION OF JEAN-PAUL JASSY

13. I am informed and believe that Jane Doe sat for a seven-hour deposition in the underlying case on September 20, 2023. Defendants in the underlying action initially filed the full transcript of that deposition on the public docket in support of a motion to compel on October 31, 2023. While the deposition transcript was on the public docket, a colleague at my law firm retrieved a copy of Jane Doe's deposition transcript from the public docket for the underlying matter at ECF 80-3. Subsequently, because the transcript had been subject to a Protective Order in the underlying action and included highly sensitive information, it was stricken from the record. A true and correct copy of pertinent excerpted pages from the publicly-filed transcript of the September 20, 2023 deposition of Jane Doe is attached as **Exhibit 6**. Exhibit 6 does not include confidential or highly sensitive information, and I have received consent from Jane Doe's counsel to file the excerpted pages of the transcript on the public docket in this case.

14. I am informed and believe that Jane Doe is currently pursuing a related state court action in Louisiana against the same defendants, including ULS. In that action, the Louisiana state court judge rejected from the bench the defendants' argument that Jane Doe's claims were time-barred. I am informed and believe that a true and correct copy of the state court ruling rejecting the statute of limitations argument ("prescription" in Louisiana state law), along with the email thread among counsel, including Ms. Giering, agreeing to the form of order, which has not yet been signed by the Court, is attached as **Exhibit 7**.

///

15. In an effort to reach a compromise in this action, Mr. Jacoby prepared and signed a declaration confirming the dates and means of his initial conversations with Jane Doe. This concurrently-filed declaration by Mr. Jacoby confirms the information in the documents Jane Doe had already produced and clarifies any uncertainty regarding the first dates of contact. On November 28, 2023, my office transmitted Mr. Jacoby's declaration to ULS's counsel in an effort to reach a compromise. ULS did not deem Mr. Jacoby's declaration sufficient, and ULS continues to seek Mr. Jacoby's unpublished newsgathering resource materials regarding the contents of Mr. Jacoby's communications with Jane Doe. That was not a line Mr. Jacoby was willing to cross for ethical, legal, and professional reasons as explained in his concurrently-filed declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 29, 2023 in Los Angeles, California.

    /s/ Jean-Paul Jassy_____
               Jean-Paul Jassy