UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH JACOBY,<br><br>  Moving Party,<br><br>  v.<br><br>BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA SYSTEM,<br><br>  Responding Party. | No.  2:23-mc-00403 KJM AC<br><br><br><br>ORDER |

This miscellaneous case was opened on the basis of journalist Kenneth Jacoby's November 13, 2023 motion to quash a subpoena with which he was served on October 31, 2023 by the Board of Supervisors of the University of Louisiana System ("ULS"). See ECF No. 1. ULS is a defendant in the underlying case <u>Jane Doe v. Board of Supervisors of the University of Louisiana System, et al.</u>, No. 22-cv-00338-BAJ-SDJ, which is pending in the U.S. District Court for the Middle District of Louisiana.  Jacoby is not a party to the underlying case.  For the reasons set forth below, the motion to quash is GRANTED.  Because this miscellaneous case was brought for the sole purpose of resolving the discovery dispute, and there are no other pending matters requiring resolution, the Clerk of Court is directed to close this case.

**I.     Relevant Background**

The moving party, Kenneth Jacoby, is a journalist who wrote an article published in USA Today on May 26, 2021 entitled "Six women reported a Louisiana college student for sexual

1

1  misconduct. No one connected the dots." ("the Article"). ECF No. 11-3. A year after the
2  Article's publication, Jane Doe, one of the women who reported Victor Daniel Silva to ULS for
3  assault, filed her lawsuit in the United States District Court for the Middle District of Louisiana
4  against The Board of Supervisors of the University of Louisiana System ("ULS") and others,
5  asserting claims for Title IX and negligence under Louisiana state law. One of USL's defenses in
6  the underlying action is that the claim is time-barred, raising the issue of when Doe learned about
7  the facts giving rise to her case. ECF No. 11 at 28-30.

8  Doe claims she learned about the material facts that form the basis of her lawsuit, for the
9  first time, when she read Jacoby's article on May 26, 2021. ECF No. 11 at 29. However, at her
10 deposition, Doe testified that she spoke with Jacoby about the article and exchanged written
11 communication with him before the article was published. Id. at 30. ULS issued the subject
12 subpoena to Jacoby to obtain information regarding what Doe discussed with Jacoby prior to the
13 article's publication so that ULS may analyze the overlap between the information published in
14 Jacoby's article and the information discussed in Doe's communications with Jacoby before the
15 article was published.

16 Following meet and confer efforts, "ULS agreed to narrow the scope of the subpoena,
17 which contains 28 document requests to non-party Jacoby, to include only the following (1) notes
18 from conversations between Jacoby and Jane Doe from December 2018 to May 26, 2021; (2) text
19 messages between Jacoby and Jane Doe from December 2018 to May 26, 2021; and (3) an
20 affidavit from Jacoby authenticating copies of the production and providing a context for the
21 production." ECF No. 11 at 6. Jacoby prepared a declaration (ECF No. 11-1) and proposed it to
22 ULS on November 28, 2023, but ULS found the declaration insufficient and maintains its request
23 for the three items noted above.

24 **II.     Governing Legal Standard**

25 A nonparty may be compelled to produce documents and tangible things via a Rule 45
26 subpoena. Fed. R. Civ. P. 34(c). Rule 45 also permits a party to issue a "subpoena commanding
27 the person to whom it is directed to attend and give testimony or to produce and permit inspection
28 of designated records or things." Fed. R. Civ. P. 45(a)(1)(C). The recipient may object to a

1  subpoena, or move to quash or modify it.  Fed. R. Civ. P. 45(c)(2), 45(c)(3).  "The district court
2  has wide discretion in controlling discovery" and "will not be overturned unless there is a clear
3  abuse of discretion."  Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir.1988).

4  Pursuant to the federal rules, "[o]n timely motion, the court for the district where
5  compliance is required *must* quash or modify a subpoena that: (i) fails to allow a reasonable time
6  to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule
7  45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver
8  applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A) (emphasis
9  added).  Additionally, "the court for the district where compliance is required *may*, on motion,
10 quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential
11 research, development, or commercial information; or (ii) disclosing an unretained expert's
12 opinion or information that does not describe specific occurrences in dispute and results from the
13 expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B) (emphasis added).

14 The Federal Rules specifically require parties to avoid creating undue burdens on third
15 parties via subpoenas.  Fed. R. Civ. P. 45(d)(1).  The Rule imposes "obligations on both attorneys
16 and courts; attorneys must obey their duty under the rule, and courts must enforce it."  Mount
17 Hope Church v. Bash Back!, 705 F.3d 418, 425 (9th Cir. 2012).  "In determining whether a
18 subpoena poses an undue burden, courts weigh the burden to the subpoenaed party against the
19 value of the information to the serving party.  Generally, this requires consideration of relevance,
20 the need of the party for the documents, the breadth of the document request, the time period
21 covered by it, the particularity with which the documents are described and the burden imposed."
22 In re Subpoena of DJO, LLC, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (internal citations and
23 quotations omitted).

24 Third party subpoenas under Fed. R. Civ. P. 45 are also subject to the limitations of Fed.
25 R. Civ. P. 26.  Fed. R. Civ. P. 26(b)(2)(C)(i) requires the court to limit discovery otherwise
26 allowed if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained
27 from some other source that is more convenient, less burdensome, or less expensive[.]"  Courts
28 routinely disallow discovery from third parties where the same discovery is easily obtained from

a party.  Glass Egg Digital Media v. Gameloft, Inc., No. 17-cv-04165-MMC-RMI, 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019); Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

### III.     Discussion

Non-party Jacoby moves to quash the subpoena on the grounds that it directly contravenes his rights as a journalist under the robust protections of the U.S. Constitution, California Constitution, California state law, and the common law.  ECF No. 11 at 8.  The Ninth Circuit has interpreted the Supreme Court case Branzburg v. Hayes, 408 U.S. 665 (1972), as establishing a qualified privilege for journalists against compelled disclosure of information gathered in the course of their work.  Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993).  "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'"  Id. at 1292 (quoting Herbert v. Lando, 441 U.S. 153, 183 (1979) (Brennan, J., dissenting) (internal quotation omitted)).  The Ninth Circuit went on to hold that compelled disclosure of unpublished newsgathering material is only permissible "upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case."  Shoen v. Shoen ("Shoen II"), 48 F.3d 412, 416 (9th Cir. 1995).

Here, the court finds the subpoena does not meet the standard necessary to invade Jacoby's journalistic protections under the First Amendment.  First, ULS has not made a sufficient showing that the sought-after discovery is non-cumulative.  Jane Doe already produced text messages between herself and Jacoby, which date no earlier than December 10, 2020.  Jassy Decl. ¶ 9(e).  Further, Jacoby's declaration resolves any uncertainty regarding the first dates and means of contact; Jacoby confirmed in a sworn declaration that his December 9, 2020 email, December 10, 2020 phone call, and December 10, 2020 text messages were his first communications with Jane Doe.  Jacoby Decl. ¶ 3.

ULS argues that Jacoby's declaration is insufficient, but its rationale for this proposition is speculative. ULS contends that it recently deposed another woman identified in the article, Andie Richard, who confirmed that she communicated with Jacoby approximately three months before the article was published, and while "ULS recognizes that Doe and Richard are different witnesses . . . because Doe and Richard were both sources for the article, Defendant anticipates that Jacoby provided both sources with similar information about the contents of his article." ECF No. 11 at 24-25. This entirely speculative argument is no reason to discount Jacoby's sworn statement regarding the earliest date of his communication with Doe. Nor does it cast legitimate doubt on the truth of Doe's deposition. Jane Doe has already testified extensively about the substance of her communications with Jacoby. See Jassy Decl. ¶ 13, Ex. 6, Tr. 321:2–329:3. Jane Doe has already confirmed that she did not see the article before it was published. See id. Tr. 308:24–309:19. Jane Doe has already testified as to what facts she first learned when reading the Article after its publication. See id. Tr. 91:8–99:18; 310:1–313:15; 324:16–325:12. Further, ULS already has all the relevant text messages between Jacoby and Doe, as produced by Jane Doe. See Jassy Decl. ¶ 9(e). The court finds the subpoena unnecessary and cumulative considering the documents and testimony already provided.

To the extent ULS argues that the specifics of the conversation are insufficiently detailed as obtained from the available sources and these potential additional details are necessary to the case, the court is not persuaded. The documents and testimony ULS has obtained in discovery thus far all confirm what Jane Doe alleged in her Complaint — that she learned the basis of her claims reading the Article. See Jassy Decl. ¶ 3, Ex. 2, Ex. 6 (Jane Doe deposition Transcript) 91:8–99:18; 310:1–313:15; 324:16–325:12. As explained in Shoen II, the party seeking to overcome the journalistic privilege "must [make] a showing of actual relevance; a showing of potential relevance will not suffice." 48 F.3d at 416 (emphasis added). It is not enough that ULS hopes or even has a hunch that Jacoby's documents will contradict Doe's testimony and the other available evidence. Accordingly, the motion to quash is GRANTED.

////

////

### IV. Conclusion

For the reasons explained above, the motion to quash (ECF No. 1) is GRANTED and the Clerk of Court is directed to close this case.

DATED: December 20, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE